# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MICHAEL STEVEN ALVAREZ,                     1:11-cv-01324-AWI-DLB (HC)

                Petitioner,

                                       FINDINGS AND RECOMMENDATION

    v.                                  REGARDING PETITION FOR WRIT OF
                                       HABEAS CORPUS

R. H. TRIMBLE,                               [Doc. 1]

                Respondent.

_____/

      Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

      Following a jury trial in the Kings County Superior Court, Petitioner was convicted of rape, making a criminal threat, and possession of methamphetamine.  In a bifurcated court trial, Petitioner was found to have four prior prison terms.  Petitioner was sentenced to a total term of thirteen years and four months in prison.

      Petitioner filed a timely notice of appeal.  On November 30, 2010, the California Court of Appeal, Fifth Appellate District affirmed the judgment in full.

      On December 30, 2010, Petitioner filed a petition for review in the California Supreme Court.   The petition was denied on February 16, 2011.

///

///

1

2

3

Petitioner filed the instant federal petition for writ of habeas corpus on August 11, 2011. On November 15, 2011, Respondent filed an answer to the petition. Petitioner did not file a traverse.

4

### STATEMENT OF FACTS

5

6

7

8

In September 2008, [Petitioner] was staying with his aunt, whose household , in addition to [Petitioner], included the aunt's then 17-year-old daughter I.A., three other children, an adult daughter, and her children. The home had one bathroom that was situated between two of the three bedrooms. The aunt and her three children slept in one room, and the adult daughter and her children slept in another bedroom. The third bedroom was not being used for sleeping at the time. Alvarez slept in the living room. The bathroom was located between the aunt's bedroom and the unused bedroom.

9

10

11

12

13

14

Late on September 29, I.A. awoke and went to use the bathroom. While she was seated on the toilet, Alvarez entered the bathroom. She told him to leave, but he refused. She got up from the toilet and started to pull up her pants. Alvarez grabbed her and told her to spread her legs. As she struggled to get away, [Petitioner] pushed apart I.A.'s legs and forced his penis into her vagina. After [Petitioner] released her and left the bathroom, I.A. returned to bed, without waking her mother or sister. The next morning, September 30, I.A. showered and went to school, but did not feel good. She started to cry in her second class of the day and asked to leave to get some air, but otherwise made it through the rest of the school day. When she got home, she washed her clothes from the night before.

15

16

17

18

19

She saw [Petitioner] at dinner time. He told her that if she told anyone she would "see what would happen." I.A. started to cry and went to her bedroom. Her mother, the aunt, asked her what was wrong. Eventually, I.A. told her mother what had happened the night before but did not provide any details. The mother asked [Petitioner] what he had done. He at first said he had done nothing, but then began gathering his belongings and left the house. He told the mother, "I am so sorry aunt." The mother called her sister-in-law and I.A.'s father. Both came to the house. Each talked with I.A., who was crying and who had locked herself in the bedroom. The family ultimately called the police.

20

21

22

23

When the police interviewed I.A., she told them what [Petitioner] had done. The police obtained a phone number for [Petitioner] and called him. They asked him to come to the station. [Petitioner] refused and told the officer calling that he knew what this was all about and that it was "bullshit." [Petitioner] said he needed "to handle his business first" and "get high." When [Petitioner] was ultimately arrested, he had 3.43 grams of methamphetamine in his pocket.

24

25

(Ex. A, to Answer, at 2-3.)

26

### DISCUSSION

27

I.    Jurisdiction

28

Relief by way of a petition for writ of habeas corpus extends to a person in custody

2

1  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

2  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

3  529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as

4  guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kings County

5  Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28

6  U.S.C. § 2241(d).

7       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

8  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

9  enactment.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

10  (9th Cir. 1997), cert. denied, 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th

11  Cir. 1996).  The instant petition was filed after the enactment of the AEDPA and is therefore

12  governed by its provisions.

13  II.    Standard of Review

14       Where a petitioner files his federal habeas petition after the effective date of the Anti-

15  Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that

16  the state court's adjudication of his claim:

17          (1) resulted in a decision that was contrary to, or involved an unreasonable
             application of, clearly established Federal law, as determined by the Supreme
18           Court of the United States;
             or
19          (2) resulted in a decision that was based on an unreasonable determination of the
             facts in light of the evidence presented in the State court proceeding.
20

21  28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d)

22  unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly

23  established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct.

24  770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412

25  (2000).  Habeas relief is also available if the state court's decision "involved an unreasonable

26  application" of clearly established federal law, or "was based on an unreasonable determination

27  of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C.

28  § 2254(d)(1), (d)(2)).  "[C]learly established ... as determined by" the Supreme Court "refers to

the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant

state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412.  Therefore, a "specific" legal rule

may not be inferred from Supreme Court precedent, merely because such rule might be logical

given that precedent.  Rather, the Supreme Court case itself must have "squarely" established that

specific legal rule.  <u>Richter</u>, 131 S.Ct. at 786; <u>Knowles v. Mirzayance</u>, __ U.S. __, 129 S.Ct.

1411, 1419 (2009).  Moreover, the Supreme Court itself must have applied the specific legal rule

to the "context" in which the Petitioner's claim falls.  <u>Premo v. Moore</u>, __ U.S. __, 131 S.Ct.

733, 737 (2011).   Under § 2254(d)(1), review is limited to the record that was before the state

court adjudicated the claim on the merits.  <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S.Ct. 1388, 1398

(2011).  "A state court's determination that a claim lacks merit precludes federal habeas relief so

long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

<u>Richter</u>, 131 S.Ct. at 786.

        "Factual determinations by state courts are presumed correct absent clear and convincing

evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court

and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254

apply to findings of historical or pure fact, not mixed questions of fact and law.  <u>See</u> <u>Lambert v.</u>

<u>Blodgett</u>, 393 F.3d 943, 976-77 (2004).

        Courts further review the last reasoned state court opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an

explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

basis for the state court to deny relief."  <u>Richter</u>, 131 S.Ct. at 784.

III.    <u>Instructional Error</u>

        Petitioner contends the trial court erred by instructing the jury pursuant to CALCRIM No.

1190 because this is a pinpoint instruction on a topic covered by a neutral instruction.  Petitioner

also claims court erred in giving a special pinpoint instruction on delayed reporting, and the errors

were cumulatively prejudicial.

4

A.    State Court Decision

The California Court of Appeal issued the last reasoned decision denying the claim stating:

**CALCRIM No. 1190**

[Petitioner] contends that the trial court erred in instructing the jury pursuant to both CALCRIM Nos. 1190 and 301, FN2 although he acknowledges that the California Supreme Court in *People v. Gammage* (1992) 2 Cal.4th 693, 7 Cal.Rptr.2d 541, 828 P.2d 682 (*Gammage*), approved the giving of earlier equivalents of both instructions. [Petitioner] argues that the decision in *Gammage* is no longer valid because its premise, i.e., that jurors must be informed that a rape victim's testimony need not be corroborated, is outdated.  According to [Petitioner], it has been 18 years since *Gammage* was decided and modern jurors can now be expected to know that the corroboration rule in rape cases has been discredited.

FN 2. CALCRIM No. 1190 as given reads, "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."  The trial court also gave CALCRIM No. 301 which reads, "The testimony of only one witness can prove any fact. [¶] Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence."

[Petitioner's] challenge must be rejected for three reasons.  First, [Petitioner] failed to object to the instruction given.  He actually stipulated that the instruction be given.  It is well settled that a party may not complain on appeal about the giving of an instruction correct in the law and responsive to the evidence unless the party objected to the instruction and/or requested clarifying or amplifying language.  (*People v. Valdez* (2004) 32 Cal.4th 73, 113, 8 Cal.Rptr.3d 271, 82 P.3d 296.)  It is undisputed, and [Petitioner] does not argue to the contrary, that CALCRIM Nos. 1190 and 301 are both correct statements of current law.  (*Gammage, supra*, 2 Cal.4th at p. 700, 7 Cal.Rptr.2d 541, 828 P.2d 682.)

Second, we are unwilling to adopt [Petitioner's] unsupported assertion that *Gammage* must be revisited because modern jurors can be expected to know that corroboration of a rape victim's testimony is not required.  In our collective legal and judicial experience, many lay jurors continue to believe generally that a witness's testimony alone is not actual "proof," and independent corroboration, usually of a physical nature, is needed to "prove" guilt.  We are unpersuaded that the concern of the court in *Gammage* that jurors might still believe a rape victim's testimony is not sufficient proof to convict has significantly changed over the 18 years since the decision was issued.

Finally, we disagree that the *Gammage* decision rests on this premise in any event.  In *Gammage*, the defendants claimed that giving both the equivalent of CALCRIM No. 1190 and CALCRIM No. 301 improperly suggested that, while other witnesses' testimony should be viewed with caution (after carefully reviewing all the evidence), the testimony of the complaining witnesses need not be reviewed as carefully.  After careful analysis of the history of the instructions, the court concluded that giving both instructions did not deprive the defendant of a fair trial.  The court acknowledged the need to protect the defendant's right to a fair trial while at the same time protecting the victim's right to testify against the assailant without unduly suffering from the inherent stigma of a criminal sexual

5

offense.  The court explained that the two instructions have different focuses, even though they overlap to some extent.  What is now CALCRIM No. 301 instructs the jury how to evaluate a fact proved solely by the testimony of a single witness and is given in the context of other instructions on the jury's factfinding process.  On the other hand, what is now CALCRIM NO. 1190 "declares a substantive rule of law" that the testimony of a complaining witness in a sexual assault crime need not be corroborated.  (*Gammage*, *supra*, 2 Cal.4th at p.700, 7 Cal.Rptr.2d 541, 828 P.2d 682.)  It is given along with other instructions setting out the legal elements of the charged crimes.  (*Id*. at pp. 700-701, 7 Cal.Rptr.2d 541, 828 P.2d 682.)

Therefore, the court expressly rejected the very argument Alvarez makes here, that the giving of both instructions creates a preferential credibility standard for a complaining witness in a sexual assault case, not on the basis that jurors might still harbor an outdated belief about proof, but on a finding that the two instructions do not dilute the "beyond a reasonable doubt" standard or lead to an unfair trial.  (*Gammage*, *supra*, 2 cal.4th at p. 701, 7 Cal.Rptr.2d 541, 828 P.2d 682.)  The court unequivocally stated, "The instructions in combination are no less correct, and no less fair to both sides, than either is individually."  (*Ibid.*)  We agree with and are bound by the court's conclusions.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

### Instruction on delayed reporting

Alvarez's second challenge on appeal is that the trial court erred in giving the following special instruction to the jury: "You have heard testimony that [I.A.] did not promptly complain about the offense alleged in Count [one].  Silence or delay in the reporting of the actions complained of in Count [one] is not inconsistent with the allegations complained of in Count [one], but may assist you in arriving at a more reliable determination as to whether the offense occurred.  However, the timing of an alleged victim's complaint is only one factor to be considered, and should be viewed among all other evidence presented regarding the circumstances under which the complaint was made."

We rejected Alvarez's challenge for a variety of reasons.  First, Alvarez did not object to the instruction given.  To the contrary, the record establishes that Alvarez specifically requested an instruction be given based on the late-reporting doctrine and that defense counsel provided the court with a proposed instruction which the court gave as modified.  Although the record does not establish the nature of the modification (because the proposed instruction is not in the record), Alvarez stipulated to the instruction as modified.  Any challenge to the instruction given on appeal is therefore forfeited because the instruction is not in the record), Alvarez stipulated to the instruction as modified.  Any challenge to the instruction given on appeal is therefore forfeited because the instruction was requested by the defense, and there was an identifiable tactical reason for doing so (to emphasize for the jury that I.A. did not immediately report the offense although she had an opportunity to do so); there was no objection to the modification; and Alvarez has failed to provide an adequate record on appeal to establish the nature of the court's modification.  (See *People v. Harris* (2008) 43 Cal.4th 1269, 1293, 78 Cal.Rptr.3d 295, 185 P.3d 727; *People v. Hardy* (1992) 2 Cal.4th 86, 152, 5 Cal.Rptr.2d 796, 825 P.2d 781; *People v. Valdez*, *supra*, 32 Cal.4th at p.113, 8 Cal.Rptr.3d 271, 82 P.3d 296.)

Further, even if we were to consider the merits of Alvarez's claim, we would reject it.  The instruction was not argumentative as Alvarez claims.  It did not tell the jury that I.A. was telling the truth about the rape or that the delay in

reporting should be disregarded.  The instruction given was neutral in content and simply instructed the jury that the delay itself was not inconsistent with a finding that the assault occurred, but that the delay in reporting was one factor to be considered in evaluating the credibility of the complaining witness.  This is an accurate statement of the law and does not favor one side or the other.  (*People v. Wright* (1988) 45 Cal.3d 1126, 1137, 248 Cal.Rptr. 600, 755 P.2d 1049 [pinpoint jury instruction should be neutral, not interfere with domain of jury, list only factors applicable to evidence, and refrain from being unnecessarily long or argumentative].)

Alvarez makes much of the fact that there was no rape trauma syndrome evidence presented in this case to explain why rape victims might delay reporting their assault.  He argues that the pinpoint instruction is an attempt at providing expert testimony in the form of a jury instruction.  Rape trauma syndrome evidence, however, is offered to assist the jury in evaluating the credibility of the complaining witness when there is a delay.  Such evidence is allowed precisely because of the possible perception by jurors that if the assault occurred as alleged, the victim would immediately report it.  The proponent of rape trauma syndrome evidence hopes that such expert evidence will dispel any misguided perceptions and provide the jury with psychological reasons why a victim might not immediately report.  (See *People v. Coffman* and *Marlow* (2004) 34 Cal.4th 1, 82, 17 Cal.Rptr.3d 710, 96 P.3d [rape trauma syndrome evidence admissible to rehabilitate testimony of complaining witness where there has been suggestion that her behavior after assault, such as delay in reporting, was inconsistent with her claim of rape]; *People v. Bledsoe* (1984) 36 Cal.3d 236, 247-248, 203 Cal.Rptr. 450, 681 P.2d 291 [rape trauma syndrome evidence may play useful role by disabusing jury of some widely held misconceptions about rape and rape victims, allowing it to evaluate evidence free of constraints of popular myths].)

The absence of such expert evidence does not, however, change the jury's duty, which is to consider the delay in evaluating the truth of the complaints made against the defendant.  As we have stated, delay alone is not inconsistent with the assault, but just one factor to be considered in weighing the evidence.  With or without rape trauma syndrome evidence, the jury must evaluate the circumstances of the delay and all the other evidence in determining the credibility of the complaining witness.  Had rape trauma evidence been introduced, the jury would have had an expert explanation to consider along with the actual evidence of the delay and I.A.'s testimony.  But, it would still have had to determine whether I.A. was credible and what if any impact the delay had on her credibility.  The instruction given by the court in this case simply stated the law and directed the jury to its charge.

Since we have found no error, we need not address Alvarez's claim of cumulative prejudice.

(Ex. A, to Answer at 3-7.)

A.   Procedural Default

Respondent initially argues that claims one and two are procedurally barred because the state court found that Petitioner failed to object to the challenged instructions at trial.  The state court found in the alternative the claims failed on the merits.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds.  Harris v. Reed, 489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules.  Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991).  If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits.  Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed."  O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984).  The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default.  Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), cert. denied, 117 S.Ct. 1569.

The appellate court refused to consider the claims pursuant to California's contemporaneous objection rule because Petitioner's failed to challenge this instruction at trial

and in fact agreed to the modification.  California's contemporaneous objection rule is

consistently applied independent of federal law.  Melendez v. Pliler, 288 F.3d 1120, 1125 (9th

Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).  Petitioner makes no showing

that the contemporaneous-objection rule was not an adequate and independent basis for its

decision.  In addition, Petitioner has not shown cause for the default or prejudice resulting from it,

or that a fundamental miscarriage of justice would occur if these claims are not heard.  Nor has

Petitioner presented any evidence establishing his actual innocence.  Therefore, Petitioner is

procedurally barred from bringing these claims.  In any event, the claims are meritless.

　　　　　B.　　　Analysis of Merits of Claims

　　　In Claim One, Petitioner argues that instructing the jury with CALCRIM No. 1190

violated his rights to due process because the court also instructed the jury with CALCRIM No.

301, which improperly bolstered the victim's testimony lessening the prosecutor's burden of

proof.

　　　　A challenge to a jury instruction solely as an error under state law does not state a claim

cognizable in a federal habeas corpus action.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To

obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process.

Id. at 72.  Additionally, the instruction may not be judged in artificial isolation, but must be

considered in the context of the instructions as a whole and the trial record. Id.  The court must

evaluate jury instructions in the context of the overall charge to the jury as a component of the

entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v,

Kibbe,  431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined that the instruction

violated the petitioner's right to due process, a petitioner can only obtain relief if the

unconstitutional instruction had a substantial influence on the conviction and thereby resulted in

actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether

the error had a substantial and injurious effect or influence in determining the jury's verdict.). See,

Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating that an

erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional

1 validity of a state court's judgment is even greater than the showing required to establish plain

2 error on direct appeal."  Id.

3        The appellate court found that instructing the jury with CALCRIM 1190 was consistent

4 with the California Supreme Court's decision in People v. Gammage, 2 Cal.4th 693, and

5 Petitioner has failed to demonstrate that the Gammage decision has been overruled or is otherwise

6 unconstitutional.  Moreover, the giving of CALCRIM 1190 and CALCRIM 301 was not

7 constitutional error.  CALCRIM No. 1190 specifically addresses the testimony of a complaining

8 witness in a sexual assault crime, while CALCRIM No. 301 addresses the testimony of a single

9 witness.[1]  Accordingly, the state court's decision applying its own state law is binding on this

10 Court, and habeas corpus relief is not available.

11        In claim two, Petitioner argues the delayed-reporting instruction was improper because it

12 implied that the victim was telling the truth about the rape, even though she delayed in reporting

13 the rape.[2]  The appellate court found that the instruction was an accurate statement of California

14 law and was neutral in nature.  In fact, Petitioner requested this special instruction be given to the

15 jury and he has not demonstrated the instruction deprived him of a fair trial.  Therefore, habeas

16 corpus relief is foreclosed.

17        The California Court of Appeal did not reach Petitioner's cumulative error claim because

18 it found no error.  This Court has addressed each of Petitioner's alleged errors and found the

19 appellate court's determination of this issue was not contrary to, or an unreasonable application

20 of, clearly established Supreme Court precedent.  Thus, Petitioner is not entitled to habeas corpus

21 relief on this claim.

22

23          [1] CALCRIM No. 1190 as given reads, "Conviction of a sexual assault crime may be based on the testimony

24 of a complaining witness alone."  CALCRIM No. 301 as given reads, "The testimony of only one witness can prove
any fact. [¶] Before you conclude that the testimony of one witness proves a fact, you should carefully review all the

25 evidence."

26          [2] The trial court gave the following special instruction to the jury: "You have heard testimony that [I.A.]
did not promptly complain about the offense alleged in Count [one].  Silence or delay in the reporting of the actions

27 complained of in Count [one] is not inconsistent with the allegations complained of in Count [one], but may assist
you in arriving at a more reliable determination as to whether the offense occurred.  However, the timing of an

28 alleged victim's complaint is only one factor to be considered, and should be viewed among all other evidence
presented regarding the circumstances under which the complaint was made."  (Ex. A at 5.)

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    The instant petition for writ of habeas corpus be DENIED; and

2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    February 9, 2012**          _____ /s/ **Dennis L. Beck**_____
                              UNITED STATES MAGISTRATE JUDGE